## MORGAN *v*. STATE.

### Opinion delivered January 14, 1924.

1.  BANKS AND BANKING—ACCEPTING DEPOSIT WHILE INSOLVENT.— Crawford & Moses' Dig., § 697, making it a felony for officers of a bank to receive deposits after knowledge of its insolvency, means a general deposit by which the bank becomes the debtor of the depositor, but does not apply in the case of special deposits.

2.  BANKS AND BANKING—COVERING OVERDRAFT NOT A GENERAL DEPOSIT.—Where money was deposited in bank to cover an overdraft, this was not a general deposit, but a payment of an existing debt.

Appeal from Perry Circuit Court; *Marvin Harris,* Judge; reversed.

*G. E. Garner* and *Lewis Rhoton,* for appellant.

*J. S. Utley,* Attorney General, *John L. Carter, Wm. T. Hammock, Darden Moose* and *J. S. Abercrombie,* Assistants, for appellee.

SMITH, J. Appellant was indicted upon a charge that, while president of the Bigelow State Bank, he did assent to and receive a deposit from W. E. Jones, knowing, at the time, that the bank was insolvent.

The testimony shows that Jones, who was a depositor in the bank, drew a check on the bank in payment of a bill which he owed. He did not have the money in the bank to take the check up, but he advised the cashier of the bank that the check had been drawn, and he requested the cashier to let him know when the check had gone the rounds and had been returned to the bank for payment, and promised, upon receipt of this information, to make a deposit to take care of the check. After a few days the check came to hand, and the cashier

advised Jones of that fact, whereupon Jones came to the bank and deposited a sum of money which was sufficient, when added to the sum he previously had on deposit, to take up the check. Upon this testimony it was insisted that no deposit was made within the meaning of the statute.

There are a number of other assignments of error, but we do not discuss them, as we are of opinion that the testimony set out above is insufficient to show that a deposit was made.

By § 697, C. & M. Digest, it is made a felony for any president, director, manager, cashier or other officer or employee of any bank, or member of a firm, after having had knowledge of the fact that it is insolvent, or in a failing condition, to assent to the reception of any deposits or the creation of any debts by it.

Evidently the deposit here referred to is a general deposit, whereby the bank would acquire the title and control of the deposit and the relation of debtor and creditor be created between the bank and the depositor. It is settled law that, in case of a general deposit of money in bank, the moment the money is deposited it becomes the property of the bank, and the bank and the depositor assume the legal relation of debtor and creditor. 3 R. C. L. p. 519.

Of course, the bank contracts to repay this money on the check of the depositor; but there is no contract to keep any particular money, and the depositor, having made a general deposit, parts with the title to the deposit and takes his place as one of the bank's general creditors. There may, of course, be a special deposit, the title to which remains in the depositor, in which case the bank has usually only some agency to perform, generally that of returning the deposit upon demand made. "In the case of a special deposit, the bank assumes merely the charge or custody of property, without authority to use it, and the depositor is entitled to receive back the identical money or thing deposited. In such case, the

right of property remains in the depositor, and, if the deposit is of money, the bank may not mingle it with its own funds. The relation created is that of bailor and bailee, and not that of creditor and debtor. Thus, the depositor may always guard against the effect of an insolvency of the institution by making a special deposit; that is, by depositing his money in a bag or box, or by affixing some mark upon it by which it can be distinguished from the general funds of the institution. * * * " Section 150 of the chapter on Banks in 3 R. C. L., page 522.

Here the sum deposited by Jones was not a general deposit. It was not made for the purpose of creating the relation of debtor and creditor between the bank and Jones and of giving the bank the title to the deposit. It was, in fact, the purpose of Jones to take up an outstanding check—to pay an existing debt, the ownership of which was evidenced by the indorsements on the check.

We do not think the transaction which Jones had with the bank constituted the reception of a deposit within either the letter or the spirit of the law, and the court should have so instructed the jury.

The judgment will be reversed, and, as the facts appear to have been fully developed, the cause will be dismissed.